IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WALTER IVAN MAPES, | |
| Petitioner, | No. CIV S-09-1643 JAM DAD P |
| vs. | |
| M.C. McDONALD, Warden, | |
| Respondent. | FINDINGS AND RECOMMENDATIONS |

Petitioner is a state prisoner proceeding pro se on a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges the Shasta County Superior Court's decision in 2006 to revoke his previously granted probation.  Petitioner seeks federal habeas relief on the ground that the trial court improperly denied his motion to relieve his counsel pursuant to the decision in People v. Marsden, 2 Cal.3d 118 (1970).

Upon careful consideration of the record and the applicable law, the undersigned will recommend that petitioner's application for habeas corpus relief be denied.

PROCEDURAL BACKGROUND

On December 1, 2006, petitioner was sentenced by the Shasta County Superior Court to a state prison term of six years and eight months after his probation was revoked for violating the terms and conditions of his probation.  (Notice of Lodging Documents on

1

September 4, 2009 (Doc. No. 12), Clerk's Transcript on Appeal ("CT") at 151-56, 161-64.) That same day timely notices of appeal were filed. (Resp't's Lod. Doc. 1 at 3.)

Before his appeal had been decided petitioner filed a petition for writ of habeas corpus in the Shasta County Superior Court on August 4, 2006. (Resp't's Lod. Doc. 6.) That petition was denied on August 22, 2006. (Resp't's Lod. Doc. 7.) Petitioner then filed a second habeas petition in the Shasta County Superior Court on March 29, 2007. (Resp't's Lod. Doc. 8.) That petition was denied on April 20, 2007.[1] (Resp't's Lod. Doc. 9.)

On December 24, 2007, the judgment and conviction was affirmed by the California Court of Appeal for the Third Appellate District in a reasoned opinion. (Resp't's Lod. Doc. 4.) Petitioner then filed a petition for review with the California Supreme Court. (Resp't's Lod. Doc. 5.) On March 12, 2008, the California Supreme Court denied that petition. (Id.) Petitioner thereafter filed a petition for writ of habeas corpus with the California Court of Appeal for the Third Appellate District. (Resp't's Lod. Doc. 11.) That petition was denied on October 9, 2008. (Resp't's Lod. Doc. 12.) Petitioner thereafter filed a petition for writ of habeas corpus with the California Supreme Court. (Resp't's Lod. Doc. 13.) That petition was denied on May 13, 2009. (Id.)

On June 15, 2009, petitioner filed the federal habeas petition now before this court. (Doc. No. 1- "Pet.") Respondent filed an answer on September 2, 2009. (Doc. No. 11- "Answer.") Petitioner then filed a traverse on September 18, 2009. (Doc. No. 13.)

FACTUAL BACKGROUND

In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the following factual summary:

/////

---

[1] On November 7, 2008, the Shasta County Superior Court also denied petitioner's request for reconsideration. (Resp't's Lod. Doc. 10.)

On October 13, 2005, defendant Walter Ivan Mapes pled guilty to one count of transporting methamphetamine (Health & Saf. Code, § 11379, subd. (a)) and admitted one prior conviction pursuant to Health and Safety Code section 11370.2, subdivision (a) (case No. 05F6320). Consistent with his plea, defendant was granted Proposition 36 probation. One week later, the probation department filed a petition to revoke defendant's probation, alleging several violations of the terms and conditions of his probation. Less than two weeks later, a second felony complaint was filed charging defendant with possession of methamphetamine, resisting a peace officer, trespassing, and possession of 28.5 grams or less of marijuana (case No. 05F8185).

In April 2006, defendant admitted the probation violation in case No. 05F6320 and pled no contest to possession of methamphetamine in case No. 05F8185. In exchange for his admission and plea, the court reinstated defendant's probation in case No. 05F6320 and granted him probation in case No. 05F8185.

In May and June 2006, the probation department filed three more petitions to revoke defendant's probation in both cases. On July 5, 2006, represented by appointed counsel Ted Loos, defendant admitted to violating his probation. Before sentencing, however, defendant sought to withdraw his admission along with his pleas to the underlying offenses.

The court appointed new defense counsel, Mr. Farrell, to determine whether filing a motion to withdraw defendant's admission and/or defendant's prior pleas was warranted. Mr. Farrell ultimately determined such a motion was not appropriate and the court reappointed Mr. Loos to represent defendant for sentencing. Defendant then requested a Marsden hearing.

On October 31, 2006, the court conducted a Marsden hearing, and denied defendant's motion.

(Resp't's Lod. Doc. 4. ("Opinion") at 1-3.)

## ANALYSIS

I. Standards of Review Applicable to Habeas Corpus Claims

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of some transgression of federal law binding on the state courts. See Peltier v. Wright, 15 F.3d 860, 861 (9th Cir. 1993); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v. Isaac, 456 U.S. 107, 119 (1982)). A federal writ is not available for alleged error in the interpretation or application of state law. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991);

3

1  Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000); Middleton, 768 F.2d at 1085.  Habeas
2  corpus cannot be utilized to try state issues de novo.  Milton v. Wainwright, 407 U.S. 371, 377
3  (1972).
4         This action is governed by the Antiterrorism and Effective Death Penalty Act of
5  1996 ("AEDPA").  See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d
6  1062, 1067 (9th Cir. 2003).  Title 28 U.S.C. § 2254(d) sets forth the following standards for
7  granting habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

15 See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362
16 (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001).  If the state court's decision
17 does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review
18 of a habeas petitioner's claims.  Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008).  See
19 also Frantz v. Hazey, 513 F.3d 1002, 1013 (9th Cir. 2008) (en banc) ("[I]t is now clear both that
20 we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such
21 error, we must decide the habeas petition by considering de novo the constitutional issues
22 raised.").
23         The court looks to the last reasoned state court decision as the basis for the state
24 court judgment.  Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  If the last reasoned
25 state court decision adopts or substantially incorporates the reasoning from a previous state court
26 decision, this court may consider both decisions to ascertain the reasoning of the last decision.

Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc).  Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d).  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).  When it is clear that a state court has not reached the merits of a petitioner's claim, or has denied the claim on procedural grounds, the AEDPA's deferential standard does not apply and a federal habeas court must review the claim de novo.  Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).

II. Petitioner's Claim

    A. Procedural Default

The Shasta County Superior Court denied petitioner's second state habeas petition on April 20, 2007, noting that "a petition for writ of habeas corpus is not a substitute for appeal" and citing the decision in In re Dixon, 41 Cal. 2d 756, 759 (1953).  (Resp't's Lod. Doc. 9.)  Similarly, on October 9, 2008, the California Court of Appeal cited the decision in In re Clark, 5 Cal. 4th 750, 782-83, 797 (1993) in denying as "untimely" petitioner's application for writ of habeas corpus filed with that court.  (Resp't's Lod. Doc. 12.)  Finally, on May 13, 2009, the California Supreme Court denied petitioner's petition for writ of habeas corpus filed with that court, citing the decision in In re Swain, 34 Cal. 2d 300, 304 (1949).  (Resp't's Lod. Doc. 13.)  Respondent argues that these rulings by the state courts constitute a procedural bar precluding this court from addressing the merits of petitioner's federal habeas claim.  (Answer at 14-16.)

State courts may decline to review a claim based on a procedural default.  Wainwright v. Sykes, 433 U.S. 72, 81-82 (1977).  As a general rule, a federal habeas court "'will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment.'"  Calderon v. United States District Court (Bean), 96 F.3d 1126, 1129 (9th Cir. 1996) (quoting Coleman v. Thompson, 501 U.S. 722, 729 (1991)).  The state rule for these purposes is

5

only "adequate" if it is "firmly established and regularly followed." Id. (quoting Ford v. Georgia, 498 U.S. 411, 424 (1991)). See also Bennett v. Mueller, 322 F.3d 573, 583 (9th Cir. 2003) ("[t]o be deemed adequate, the state law ground for decision must be well-established and consistently applied.") The state rule must also be "independent" in that it is not "interwoven with the federal law." Park v. California, 202 F.3d 1146, 1152 (9th Cir. 2000) (quoting Michigan v. Long, 463 U.S. 1032, 1040-41 (1983)). Even if the state rule is independent and adequate, the claims may be subject to habeas review by the federal court if the petitioner can show: (1) cause for the default and actual prejudice as a result of the alleged violation of federal law; or (2) that failure to consider the claims will result in a fundamental miscarriage of justice. Coleman, 501 U.S. at 749-50.

However, in this case petitioner raised the claim he raises here on direct appeal to the California Court of Appeal. While that appeal was pending, petitioner filed a petition for writ of habeas corpus in the Shasta County Superior Court on August 4, 2006. (Resp't's Lod. Doc. 6.) That petition was denied on August 22, 2006. (Resp't's Lod. Doc. 7.) Petitioner then filed a second habeas petition in the Shasta County Superior Court on March 29, 2007. (Resp't's Lod. Doc. 8.) The Shasta County Superior Court denied that petition on April 20, 2007, stating that petitioner's "appeal is pending" and noting that he had raised some grounds "not raised" in his prior habeas petition filed with that court. (Resp't's Lod. Doc. 9.) Thus, the Superior Court's citation to In re Dixon and observation that a petition for writ of habeas corpus is not a substitute for an appeal, did not apply to the Marsden claim that he raised on direct appeal and which he presents to this court, but instead was directed only to the other grounds petitioner had not raised in his prior state habeas petition.

On December 26, 2007, after the Shasta County Superior Court had denied petitioner's second habeas petition on April 20, 2007, the California Court of Appeal affirmed petitioner's judgment of conviction on appeal addressing on the merits the Marsden claim he raises in his pending federal habeas petition. (Resp't's Lod. Doc. 4.) On March 12, 2008, the

6

1  California Supreme Court summarily denied petitioner's petition for review of that decision.
2  (Resp't's Lod. Doc. 5.)  Therefore, the California Supreme Court denied that petition for review
3  on the merits.  See Maxwell v. Roe, 606 F.3d 561, 568 (9th Cir. 2010); Barker v. Fleming, 423
4  F.3d 1085, 1091 (9th Cir. 2005) (where more than one state court has adjudicated petitioner's
5  claims, a federal habeas court analyzes the last reasoned decision; later unexplained orders,
6  upholding a judgment or rejecting the same claim, rests upon the same ground as the prior order),
7  cert. denied ___U.S.___, 126 S. Ct. 2041 (2006); see also Ylst v. Nunnemaker, 501 U.S. 797,
8  803 (1991).

On October 2, 2008, after the California Supreme Court summarily denied the petition for review, petitioner filed yet another petition for writ of habeas corpus, this time in the California Court of Appeal.  (Resp't's Lod. Doc. 11, 12.)  In the state appellate court's October 9, 2008 order denying that petition the court admonished petitioner for waiting seventeen months after the Shasta County Superior Court denied his habeas petition before filing his petition with the California Court of Appeal.  (Resp't's Lod. Doc. 12.)  There was no mention of petitioner's appeal or the California Supreme Court's denial of the petition for review on the merits.

Thereafter, on January 20, 2009, petitioner filed another petition for writ of habeas corpus, this time in the California Supreme Court.  The May 13, 2009 order denying that petition merely stated "petition for writ of habeas corpus is denied," and provided a citation to the decision in In re Swain.  (Resp't's Lod. Doc. 13.)  Again, the California Supreme Court made no mention of petitioner's direct appeal or the California Supreme Court's earlier summary denial of his petition for review on the merits.

It would appear, therefore, that federal habeas review of petitioner's Marsden claim is not procedurally barred.  Petitioner timely raised this claim on direct appeal from his judgment of conviction.  The claim was rejected on the merits and no procedural grounds were cited by the state court in rejecting petitioner's arguments with respect to this claim.   Even if this were not the case, a reviewing habeas court need not invariably resolve the question of

procedural default prior to ruling on the merits of a claim where the default issue turns on difficult questions of state law. Lambrix v. Singletary, 520 U.S. 518, 524-25 (1997); see also Busby v. Dretke, 359 F.3d 708, 720 (5th Cir. 2004). Under the circumstances presented here, this court finds that petitioner's claim can be resolved more easily by addressing it on the merits.

Accordingly, for the reasons stated above, this court will treat petitioner's claim as not being procedurally defaulted.

B. Marsden Motion

Petitioner alleges that the state trial court improperly denied his motion to relieve his trial counsel pursuant to the decision in People v. Marsden, 2 Cal.3d 118 (1970). Specifically, petitioner argues that the trial court failed to "conduct a full and careful inquiry" into why petitioner wished to discharge his appointed counsel because the trial court "became frustrated with petitioner and ended" the hearing on his Marsden motion before petitioner could state "all his reasons" in support thereof. (Pet. at 9.)[2] Petitioner claims that as a result the trial court "failed to discharge its duty to assure petitioner's right to competent counsel." (Id.)

The last reasoned state court decision addressing this claim is from the California Court of Appeal. That court specifically rejected petitioner's argument that the trial court erred in denying his Marsden motion. In so holding, the state appellate court reasoned as follows:

> Defendant appeals arguing the trial court erred in denying his motion to discharge appointed counsel pursuant to People v. Marsden, supra, 2 Cal.3d 118, based on an inadequate hearing.
>
> When a defendant seeks to discharge his court-appointed counsel on the basis of inadequate representation, the trial court must allow defendant to explain the basis of his claim and to relate specific instances of counsel's inadequate representation. (People v. Smith (2003) 30 Cal.4th 581, 604.) We review the trial court's decision denying defendant's Marsden motion under the deferential abuse of discretion standard. (People v. Jones (2003) 29 Cal.4th 1229, 1245.)

/////

---

[2] Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

8

Here, the trial court began the Marsden hearing by explaining to the defendant that the court was looking for "specific reasons" why Mr. Loos had "fallen below the standards, . . . the norms . . . ." The court then asked, "So how is it that now that we are at sentencing, which your previous Motion is being denied - how is it that the Public Defender's Office is not representing you appropriately for this sentencing?"

Defendant immediately began talking about a motion he claimed the court had "ordered" Mr. Loos to file. The court clarified that the motion to which defendant referred was the motion to withdraw defendant's plea and admission, which the court already appointed Mr. Farrell to consider, and which Mr. Farrell determined to be unwarranted. Defendant nevertheless continued to assert that Mr. Loos had fallen below the standards for not filing that motion.

Having already addressed the issue of the motion to withdraw defendant's pleas and admission, the court attempted to flush out any additional concerns the defendant may have regarding Mr. Loos's representation:

"THE COURT: "[I] want to hear what it is that Mr. Loos hasn't done that he should have done. So far I haven't heard anything.

"A. Okay. Well, I keep getting interrupted. I have been trying to get him to address -

"Q. Address what?

"A. The medication.

"Q. Which medication; the five milligrams-

"A. The medication that is prescribed to me by my doctors."

Trying to clarify what the defendant's medication had to do with Mr. Loos's failure to adequately represent the defendant, the court asked another, more direct question:

"Q. Okay. You pled to sale or transportation of methamphetamine on August 5th. You entered that plea originally on October 13th, 2005. You had gotten a Proposition 36 sentencing on the same date. And so now you want to challenge that plea?

"A. Yes.

"Q. And what did Mr. Loos tell you about challenging a plea 15 months ago?

/////

9

1   "A. I have been trying since that very day.  I told him that day that I have the medication Disoxyn (phonetic) and it very well may test
2   positive for methamphetamine.

3   "Q. And you told him that on the day you entered the plea, 10/13-

4   "A. Yes.  He told me -

5   "Q. - of 2005?

6   "A. If I could carry on -

7   "Q. No, you can't.  I'm talking now.  You told him a year and two weeks ago that you were under the influence of methamphetamine?
8   Help me out.

9   "A. No, sir.  I told him that I have a prescription for it.

10  "Q. For methamphetamine?

11  "A. For a drug that has some of that in it.

12  "Q. And did you give him that prescription at any time prior to entering your plea?
13
    "A. I told him that I was in jail.  I told him I wanted my own
14  recognizance back because I was in the hospital on the day that I was supposed to show up for court.  And I gave the District
15  Attorney - I had it dropped off at his office because I had - I called in after I got out of the hospital - [¶] ... [¶]
16
    "THE COURT: If I understand Mr. Mapes now, he's telling me
17  that back either on the day he entered a plea in 05F6320, which was again October 13, 2005, a year and two weeks ago or so, that
18  he told you he had a prescription for some medication that contained methamphetamine.
19
    "Q. Correct?
20
    "A. Yes.
21
    "THE COURT: Ergo, he would not be guilty of possessing
22  methamphetamine?  Is that what I'm supposed to extract from that?
23
    "THE DEFENDANT: That is what I have been trying to get him to
24  get to my doctors . . . . I have been trying to get him to do that since day one."
25
    Seemingly unable to move defendant away from his concern that
26  Mr. Loos did not file a motion to withdraw defendant's initial plea

10

based on defendant's prescription, the court asked defendant again whether he had any other concerns. Defendant responded:

"A. Okay. The Penal Code states -

"Q. I'm not interested in what the Penal Code states, unless it's relevant -

"A. This is what he has not done for me.

"Q. - unless it is relevant to what Mr. Loos hasn't done.

"A. It all stems from if he would have got my prescription from the doctors, as I have asked him to in the very beginning, the whole thing would have been stopped.

"Q. Okay. So your position is, you have a prescription that permits you to carry methamphetamine up to 3.1 grams gross field weight?

"A. There is - that is not what was in there, sir. That is not what was in there. It comes in a little bottle and it's liquid. They cannot ship pills in the mail.

"Q. How did they get this white powdery stuff in the baggie?

"A. It probably got hot in the bottle and leaked out.

"Q. Okay. . . ."

Having given the defendant numerous opportunities to identify any concerns other than Mr. Loos's failure to file this motion, the court then ended the <u>Marsden</u> hearing and denied defendant's motion.

After the court ended the hearing, the defendant claimed there was "a lot of stuff that Mr. Loos has not done for me." The court nevertheless told defendant the hearing was over. Defendant now contends the court's decision to stop the hearing was arbitrary and abrupt, rendering the hearing inadequate. Defendant ignores the rest of the record.

As is evident from the record, the trial court gave defendant ample opportunity to express his concerns regarding Mr. Loos's representation. Three times during the hearing the court asked defendant if Mr. Loos's representation fell below the standards for any reason other than Mr. Loos's failure to file the motion to withdraw defendant's initial plea. Rather than raising any additional concerns, defendant continued to give reasons to assert that the motion should have been filed. Defendant ignored the fact that Mr. Farrell, independent counsel, appointed to evaluate the merits of such a motion, determined it was unwarranted.

/////

> The court is not obligated to rehash the merits of an unfiled motion, argued to the court, in the guise of a Marsden hearing. Nor is the court required to mine a defendant's psyche for any concern he may have with his appointed counsel. The court is obligated only to give defendant the full opportunity to present all of his concerns regarding his attorney's alleged inadequate representation. (People v. Smith, supra, 30 Cal.4th at p. 604.) The record here establishes that this is precisely what the trial court did.

(Opinion at 3-8.)

The denial of a motion to substitute counsel implicates a defendant's Sixth Amendment right to counsel and therefore may present a cognizable claim for federal habeas relief, as "it is well established and clear that the Sixth Amendment requires on the record an appropriate inquiry into the grounds for such a motion, and that the matter be resolved before the case goes forward." Schell v. Witek, 218 F.3d 1017, 1025 (9th Cir. 2000) (en banc). See also Hudson v. Rushen, 686 F.2d 826, 829 (9th Cir. 1982).[3]

The Ninth Circuit Court of Appeals has explained what type of inquiry a trial court must make to satisfy the requirements of the Sixth Amendment when a criminal defendant brings a motion to replace his counsel on grounds of an irreconcilable conflict, stating as follows:

> "Before ruling on a motion to substitute counsel due to an irreconcilable conflict, a district court must conduct 'such necessary inquiry as might ease the defendant's dissatisfaction, distrust, and concern.'" [Citations.] This inquiry must give the court "a sufficient basis for reaching an informed decision." United States v. McClendon, 782 F.2d 785, 789 (9th Cir. 1986), overruled on other grounds by United States v. Garrett, 179 F.3d 1143 (9th Cir. 1999). The district court should inquire into, inter alia, (1) how long a continuance new counsel would require, if any; (2) how much inconvenience would result from the substitution; (3) how much the breakdown in communication prevented adequate preparation; and (4) why the defendant did not make the motion earlier, if the motion was late. [Citation.]

United States v. Reyes-Bosque, 596 F.3d 1017, 1033 (9th Cir. 2010). See also Daniels v.

---

[3] Even if erroneous under state law, however, the trial court's denial of a petitioner's Marsden motion provides a ground for federal habeas relief only where the denial violated petitioner's federal constitutional rights. See 28 U.S.C. § 2254(a).

12

1  Woodford, 428 F.3d 1181, 1200 (9th Cir. 2005) ("When a trial court is informed of a conflict
2  between trial counsel and a defendant, the trial court should question the attorney 'privately and
3  in depth' and examine available witnesses . . . . A conflict inquiry is adequate if it 'eases the
4  defendant's dissatisfaction, distrust and concern' and 'provides a sufficient basis for reaching an
5  informed decision.'") (internal citations omitted); United States v. Adelzo-Gonzales, 268 F.3d
6  772, 777 (9th Cir. 2001) ("Before ruling on a motion to substitute counsel due to an
7  irreconcilable conflict . . . the district court may need to evaluate the depth of any conflict
8  between defendant and counsel, the extent of any breakdown in communication, how much time
9  may be necessary for a new attorney to prepare, and any delay or inconvenience that may result
10 from substitution."); Hudson v. Rushen, 686 F.2d 826, 829 (9th Cir. 1982) (substantially
11 paralleling the California rule, the Sixth Amendment requires that the trial court take the time to
12 conduct such necessary inquiry as might ease the defendant's dissatisfaction, distrust and
13 concern).

14         In Schell, the issue before the court concerned "the constitutionality of a state
15 court's handling of a motion to substitute appointed counsel based on allegations of an
16 irreconcilable conflict." 218 F.3d at 1024.  Nonetheless, the Ninth Circuit noted that "it is
17 conceivable [a criminal defendant] could show that he received ineffective assistance of counsel
18 unrelated to a serious conflict between [him] and his attorney." Id. at 1028.  However, even
19 where there exists an irreconcilable conflict between a defendant and his attorney, such a conflict
20 only violates the Sixth Amendment when "there is a complete breakdown in communication
21 between the attorney and client, and the breakdown prevents effective assistance of counsel."
22 Stenson v. Lambert, 504 F.3d 873, 886 (9th Cir. 2007.)

23         Here, petitioner does not assert that there was any irreconcilable conflict or
24 breakdown in communication between him and his appointed counsel.  Petitioner merely argues
25 that the trial court became "frustrated with petitioner and ended the Marsden hearing" before
26 /////

petitioner could "list all of his reasons" for wishing to relieve his appointed counsel. (Pet. at 9.)[4] Petitioner asserts that his statement that his trial counsel's failure to a motion to withdraw his plea was one ground constituted an "explicit indication" that he had "further grounds for his request." (Id. at 9.) Petitioner also points to his statement to the trial court at the end of the hearing that, "[t]here is a lot of stuff that [counsel] has not done for me." (Id.)

The record reflects that the state trial court went to great lengths to allow petitioner to articulate his grounds underlying his Marsden motion and to examine that motion. The court began the Marsden hearing by explaining the purpose of the hearing, by providing specific examples of the types of grounds that are relevant to a Marsden motion and by imploring petitioner to state "specific reasons" as to why his motion to relieve his appointed counsel should be granted. (Reporter's Transcripts on Appeal ("RT") Vol. 2, at 6-9.) The trial court then invited petitioner to state his reasons, asking him directly, "how is it that the Public Defender's Office is not representing you appropriately for this sentencing?" (Id.) After petitioner's lengthy statement focusing solely on his concern about the failure to file a motion to withdraw his plea, the following exchange occurred between the trial court and petitioner:

> Q. Is there anything else that Mr. Loos and/or his office has erred on? Any other topics? Any other things he hasn't done? He hasn't filed a motion, now we know, relevant to withdrawing your plea, because you had a prescription for this methamphetamine.
>
> A. That is one, yes.
>
> Q. I want to go on to the next one, if there is a next one.
>
> A. Okay. The Penal Code states - -

/////

---

[4] Petitioner does make a single conclusory statement in his traverse that he sought to relieve his trial counsel "as a result of an irreconcilable relationship that cause (sic) a lack of communication as well as a lack of defense that prejudice (sic) the petitioner." (Traverse at 9.) However, petitioner has not provided this court with any specific facts in support of this conclusory allegation. Of course, "'[c]onclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief.'" Jones v. Gomez, 66 F.3d 199, 204 (9th Cir. 1995) (quoting James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994)).

14

      Q. I'm not interested in what the Penal Code states, unless it's relevant - -

      A. This is what he has not done for me.

      Q. - - unless it is relevant to what Mr. Loos hasn't done.

      A. It all stems from if he would have got my prescription from the doctors, as I have asked him to in the very beginning, the whole thing would have been stopped.

(Id. at 16-17.)

      As is evident from this exchange, despite the state trial judge's repeated attempts to illicit from petitioner additional grounds upon which he based his Marsden motion, petitioner never mentioned any ground other than that relating to the motion to withdraw his plea. Similarly, before this court petitioner has not stated a single specific additional ground for relief that he was prohibited from expressing at his Marsden hearing. Petitioner's argument that the trial court terminated the Marsden hearing without adequately inquiring into any additional grounds upon which he based his motion is therefore entirely unsupported. Petitioner has simply not alleged the existence of any additional grounds that he was prevented from presenting.

      The record in this case demonstrates that the state trial court engaged in a thorough inquiry of petitioner's complaint regarding his appointed counsel. The hearing continued until the state trial court became clear that petitioner had no additional grounds to present, despite his general proclamations otherwise. In this regard, the trial court continued conducting the hearing until it had a sufficient basis for reaching an informed decision. There was simply no need to continue the hearing past that point. See King v. Rowland, 977 F.2d 1354, 1357 (9th Cir. 1992) (the record may demonstrate that extensive inquiry was not necessary); Hudson, 686 F.2d at 831 (trial court's inquiry need only be "as comprehensive as the circumstances reasonably would permit.")

      Moreover, with respect to the sole ground for relief that petitioner has articulated to either the state trial court or this court, i.e., that his appointed counsel failed to file a motion to

15

withdraw his plea, any attorney-client conflict with respect to this issue is insignificant under Sixth Amendment standards.  See Brookhart v. Janis, 384 U.S. 1, 8 (1966) ("[A] lawyer may properly make a tactical determination of how to run a trial even in the face of his client's incomprehension or even explicit disapproval."); United States v. Carter, 560 F.3d 1107, 1113 (9th Cir. 2009) ("A conflict that is based solely on disputes regarding trial tactics generally is not the type of conflict that warrants substitution of counsel."); Stenson, 504 F.3d at 886 ("Disagreements over strategical or tactical decisions do not rise to level of a complete breakdown in communication."); United States v. McKenna, 327 F.3d 830, 844 (9th Cir. 2003) (counsel's refusal to file motions not supported by the evidence is not sufficient conflict to warrant substitution); Schell, 218 F.3d at 1026 ("It may be the case . . . that because the conflict was of Schell's own making, or arose over decisions that are committed to the judgment of the attorney and not the client, in fact he actually received what the Sixth Amendment required in the case of an indigent defendant, notwithstanding the State trial court's failure to inquire."); United States v. Rogers,769 F.2d 1418, 1424 (9th Cir. 1985) (pessimistic prognosis by counsel is not grounds for substitution of counsel); see also Morris v. Slappy, 61 U.S. 1, 11 (1983) (Sixth Amendment does not guarantee "meaningful attorney-client relationship").

        For the foregoing reasons, the state appellate court's conclusion that the trial court did not improperly deny petitioner's Marsden motion is not contrary to or an unreasonable application of federal law.  Accordingly, petitioner is not entitled to relief on his only claim in these federal habeas proceedings.

## CONCLUSION

        Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus (Doc. No. 1) be denied.

        These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within twenty-one days after being served with these findings and recommendations, any party may file written

objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within seven days after service of the objections.  Failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).  In any objections he elects to file petitioner may address whether a certificate of appealability should issue in the event he elects to file an appeal from the judgment in this case. See Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED: October 31, 2010.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:6
mapes1643.hc